IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SUSAN L. PROPHET                                                                    PLAINTIFF


V.                              Civil No. 2:17-cv-02062-PKH-MEF


NANCY A. BERRYHILL, Commissioner
Social Security Administration                                                      DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Susan Prophet, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background**

Plaintiff filed her application for DIB on April 23, 2014, alleging an onset date of April 5, 2013, due to arthritis in the spine, degenerative disk disease ("DDD") of the lumbar spine, herniated and bulging disks, dyspnea, a bad right knee, peripheral neuropathy in the spine, degenerative joint disease ("DJD") in the right knee, cholesterol issues, a bad left hip, and depression.  (ECF No. 8, pp. 75, 91-92, 162-168, 197, 215-216).  On August 7, 2015, the ALJ held an administrative hearing.  (ECF No. 8, p. 31-73).  Plaintiff was present and represented by counsel.

By a written decision dated March 9, 2016, the ALJ determined Plaintiff's DDD, hyperlipidemia, coronary artery disease ("CAD"), obesity, and affective disorder were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (ECF No. 8, p. 18).  After discounting the Plaintiff's credibility, he found that Plaintiff retained the residual functional capacity ("RFC") to perform light work involving occasional stooping and crouching; routine, but superficial interpersonal contact; and, tasks learned by experience and requiring limited judgment.  (ECF No. 8, p. 20).  The ALJ also concluded Plaintiff would require little supervision for routine tasks, but detailed supervision for non-routine tasks.  With the assistance of a vocational expert, then ALJ determined the Plaintiff capable of returning to her PRW as a bottling line attendant and liquor inspector. (ECF No. 8, pp. 22-23).

The Appeals Council denied the Plaintiff's request for review on February 17, 2017. (ECF No. 8, pp. 5-8).  Subsequently, Plaintiff filed this action.  (ECF No. 1).  This matter is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  (ECF Nos. 9, 12).

## II.     Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence

2

in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education,

and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III.    Discussion

Plaintiff raises four issues on appeal: (1) Whether the ALJ failed to fully and fairly develop the record; (2) Whether the ALJ erred in his credibility assessment; (3) Whether the ALJ's RFC determination is supported by substantial evidence; and, (4) Whether the ALJ erred at Step Four by concluding the Plaintiff could return to her past relevant work ("PRW") because said PRW was a composite job. After reviewing the record, the undersigned agrees that the ALJ's RFC determination lacks substantial support in the record.

The record reveals a history of lower back pain resulting from a job-related injury in 2004. Although seven years prior to the relevant time period, a 2005 MRI of the Plaintiff's pelvis showed some disk bulging at the L5-S1 level and some possible asymmetry of the levator musculature, with the right side smaller than the left. (ECF No. 8, p. 495).

In February 2012, Plaintiff underwent a general physical exam with Dr. Clifford Evans. (ECF No. 8, pp. 273-277). Dr. Evans noted a decreased range of motion in the lumbar spine, and although straight leg raise tests were negative bilaterally, she did experience pain in the lower back when lifting the right leg. Dr. Evans diagnosed DDD in the lumbosacral spine, peripheral neuropathy in the lumbosacral spine, DJD in the right knee, and mild sacroilitis bilaterally. He opined that Plaintiff would have mild to moderate limitations to the body as a whole.

On February 7, 2012, non-examining consultant, Dr. Judith Forte, reviewed Plaintiff's medical records and completed an RFC assessment. (ECF No. 8, pp. 496-503). She concluded Plaintiff could perform medium level work with occasional stooping and crouching.

On October 16, 2012, Plaintiff complained of lower back pain. (ECF No. 8, p. 292, 301, 519). Over the previous year, her pain had reportedly begun radiating into her left leg. It was exacerbated by standing, sitting, and walking. X-rays of her lumbar spine showed degeneration and disk space narrowing at the L2-3 and L5-S1 levels. An examination revealed tenderness over the lumbosacral area with a positive straight leg raise test on the left side at 90 degrees. Plaintiff was diagnosed with lumbago and prescribed Mobic.

On August 28, 2013, an MRI of the Plaintiff's lumbar spine revealed a posterior disk herniation at the L5-S1 level more prominent to the left of the midline with left foraminal stenosis and a mild disk bulge at the L2-3 level. (ECF No. 8, p. 289, 373).

On September 9, 2013, Plaintiff reported continued chronic low back pain radiating into the left lower extremity. (ECF No. 8, p. 286). She also reported a burning sensation in her left thigh. The physician at Good Samaritan Clinic noted that her MRI had shown DDD and confirmed a disk herniation at the L5-S1 level and a mild disk bulge at the L2-3 level.

On February 19, 2014, Plaintiff presented to establish care with nurse practitioner, Corinne Willis. (ECF No. 8, pp. 389-398). She reported severe lower back pain with radiculopathy, neck pain, and mid-back pain. Plaintiff had recently been prescribed both Tramadol and Robaxin at Convenient Care. X-rays of her thoracic spine showed some mild degenerative changes and mild scoliotic curvature for which she was prescribed a series of stretching exercises. Further, an examination revealed tenderness to palpation of the lower

5

lumbar paraspinous muscles with a decreased range of motion. She also exhibited positive straight leg raise tests bilaterally. Nurse Willis diagnosed chronic thoracic, low back, and neck pain; muscle spasm; and, lumbar radiculopathy.

On March 19, 2014, Plaintiff returned for a follow-up with Nurse Willis. (ECF No. 8, pp. 403-405). An examination revealed continued musculoskeletal tenderness, although no range of motion deficits were detected. Nurse Willis prescribed Tramadol, Gabapentin, and Methocarbamol.

On March 31, 2014, Plaintiff consulted with neurosurgeon, Dr. John Pulliam. (ECF No. 8, pp. 321-226). She described her pain as bilateral lumbosacral pain, left side greater than the right with burning and stinging in her left leg, and swelling in her left foot. Plaintiff also reported instances of her left leg giving out. An examination revealed mild, diffuse lumbosacral tenderness with focal tenderness in the left S1 region, marked tenderness in the left lateral hip, significant pain with internal rotation of the left hip, and a possible slight reduction in the reflex in the right knee. After reviewing her MRI results from August 2013, Dr. Pulliam diagnosed lumbosacral back pain, bursitis of the left hip, lumbar facet arthropathy, degeneration of the lumbar or lumbosacral intervertebral disk, and obesity. He prescribed physical therapy, a home exercise program, Naproxen and Robaxin, and he referred her to Dr. Goodman for bilateral lumbar facet injections. On April 21, 2014, she underwent her first injection. (ECF No. 8, pp. 374-377).

On April 22, 2014, Plaintiff reported that the facet injection had not been successful, but she indicated that the Gabapentin was helpful. (ECF No. 8, pp. 411-413). Her physical

exam remained unchanged, and Nurse Willis refilled her medications. Plaintiff advised Nurse Willis that she would call physical therapy and set up an appointment.

On June 5, 2014, Plaintiff returned for a follow-up with Dr. Pulliam. (ECF No. 8, pp. 327-328). Plaintiff reported improvement for only one week following her first facet injection. Further, due to family medical issues, she had not yet attended physical therapy ("PT"). Accordingly, Dr. Pulliam issued a new prescription for PT and advised her to discuss the possibility of a facet rhizotomy, as well as additional injections options with Dr. Goodman.

On June 10, 2014, Dr. Goodman noted continued decreased sensation at the L4-5 level. (ECF No. 8, pp. 520-521). Because the facet injection was only beneficial for one week, he administered an epidural steroid injection ("LESI") at the L4-5 level.

On June 11, 2014, Plaintiff was treated in the ER for chronic neck and mid-to-low back pain. (ECF No. 8, pp. 333-346). Her thoracic spine revealed scattered degenerative changes with a minimal scoliotic curvature. On exam, Plaintiff exhibited a normal range of motion in her neck and tenderness in the lower lumbar paraspinous muscles.

On June 12, 2014, Plaintiff underwent a physical therapy evaluation. (ECF No. 8, pp. 350-353). In addition to left lower back and lower extremity pain, which she rated as a 10 on a 10-point scale, Plaintiff reported a history of falls, with the most recent occurring the previous week. She stated that her left leg just "gave away." On examination, Plaintiff demonstrated moderate discomfort during sit-stand transition and required heavy bilateral upper extremity support to push-up from a chair and a right lean to offload her left buttock when sitting. She had a full range of motion in her lumbar spine, although it was both labored and slow. The therapist recommended that her therapy include lumbar strengthening and stretching exercises,

7

core stabilization, muscle energy technique, endurance training, safety awareness and body mechanics training, functional mobility tasks, lumbar mechanical traction, and modalities as indicated. The Plaintiff participated in at least seven physical therapy sessions between June and July 2014.

On August 6, 2014, agency consultant, Dr. Dan Gardner, reviewed Plaintiff's medical records and concluded she could perform medium level work with occasional stooping and crouching. (ECF No. 8, pp. 83-84).

On October 2, 2014, Plaintiff advised Dr. Goodman that her last LESI had resulted in pain relief for only two weeks. (ECF No. 8, pp. 522-523). He proposed two additional LESIs before referring her to neurosurgery for a second opinion. He also recommended that her Gabapentin dosage be increased.

On November 19, 2014, Plaintiff followed-up with Nurse Willis. (ECF No. 8, pp. 466-467). She indicated that the injections provided by Dr. Goodman helped, but only for a few days. The Robaxin and Neurontin were also reportedly beneficial. Accordingly, Nurse Willis refilled the Robaxin and prescribed Ultram.

On December 16, 2014, Plaintiff returned to Dr. Goodman's office. (ECF No. 8, pp. 524-525). Unfortunately, the LESIs administered in October and November were only helpful for a few days. He recommended LESI's at the L5-S1 level, and referred her to Dr. Arthur Johnson.

On May 1, 2015, a CT scan of the Plaintiff's lumbar spine showed some broad disk bulging and spur formation into the exit foramen, mild facet arthropathy at the L5-S1 level, a slight disk bulging at the L4-5 level with mild facet arthropathy and no canal stenosis, and mild

disk bulging with disk space narrowing and anterior spurring at the L2-3 level. Levels L3-4 and L4-5 were also suspicious for a small amount of leakage along the injection tract into the right exit foramen region.

On June 12, 2015, an MRI of Plaintiff's lumbar spine showed significant DDD with disk space narrowing and disk desiccation at the L2-3 and L5-S1 levels; broad bulging at those levels with moderate bilateral exit foramen stenosis at the L5-S1 level; and, mild bilateral facet arthropathy at the L5-S1 and L4-5 levels. (ECF No. 8, p. 486).

On July 2, 2015, Plaintiff consulted with neurosurgeon, Dr. Arthur Johnson. (ECF No. 8, pp. 488-494). An examination revealed only mild paraspinous muscle tenderness. He noted her history of chronic low back pain radiating into her left hip and lateral thigh that had been unresponsive to LESIs, as well as her reports of her left knee giving way. He diagnosed lumbar discogenic pain syndrome, chronic low back pain, lumbosacral back pain, and degeneration of lumbar or lumbosacral disks. Dr. Johnson concluded that she was a candidate for minimally invasive transforaminal lumbar interbody fusion surgery at the left L5-S1 level.

Utilizing assessments from non-examining physicians who concluded Plaintiff could perform medium level work with occasional stooping and crouching and Dr. Evans' consultative exam dated one year prior to the relevant period, the ALJ concluded Plaintiff could perform a limited range of light work physically requiring only occasional stooping and crouching. These assessments, however, do not take into account the failed LESIs, the most recent CT scan and MRI documenting moderate bilateral exit foramen stenosis at the L5-S1 level (compression of the spinal nerve root) and suspicion of leakage along the injection tract into the right exit foramen region at the L3-5 levels, or Dr. Johnson's surgical recommendation.

9

As it does appear the Plaintiff's condition has deteriorated, the Court finds that remand is necessary to allow the ALJ to further develop the record regarding her physical RFC.

On remand, the ALJ is directed to obtain a consultative orthopedic or neurosurgical examination, complete with a thorough RFC assessment, to develop the record with regard to the Plaintiff's ability to consistently sit, stand, walk, and perform postural activities during an eight-hour workday. The ALJ should also attempt to obtain an RFC assessment from Dr. Johnson.

As there does appear to be some question concerning the Plaintiff's PRW, the ALJ is further directed to reconsider her PRW and determine whether her work at Hiram Walker constituted a composite job.

### IV. Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of June 2018.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE